homestead, these men, Smith & McCurdy, had no title as individuals to this property; and no title in it whatever under the order of court, except as an exemption for the benefit of the family, in their character of heads of families, without power to alienate except jointly with their wives, and then only for the purpose of reinvestment in some other property to be held as an exemption. Therefore Smith & McCurdy had no power to sell. Foster had full notice that this was a family exemption, and was bound to know the provisions of the laws of Virginia denying to them that power. It is a plain principle of law that a person who buys goods (otherwise than in market overt) acquires no better title than that possessed by his immediate vendor, even though such purchaser buys bona fide, without notice of any infirmity of title on the part of his vendor. Here Foster bought with full notice of facts which, as he was bound in law to know, negative the right of the vendors to sell. He therefore acquired no right to the goods by his purchase. To allow such a purchase as this to stand would be to establish a pernicious precedent.

The goods in question must therefore be taken possession of by the assignee as part of the assets of these bankrupts.

---

## Case No. 12,980.

### In re SMITH.

[11 Int. Rev. Rec. 78.]

District Court, S. D. New York. 1870.

---

## Case No. 12,981.

### In re SMITH et al.

[2 Lowell, 69.] 1

District Court. D. Massachusetts. Sept., 1871.

BANKRUPTCY—TRADER—RAILROAD CONTRACTOR.

One who contracts with a railroad company to grade and build its road is not, by virtue of such contract and his acts under it, a merchant or trader within section 39 of the bankrupt act [of 1867 (14 Stat. 536)], and the suspension of his commercial paper is, therefore, not an act of bankruptcy.

[Cited in Daniels v. Palmer, 35 Minn. 350, 29 N. W. 164.]

---

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

A creditor's petition represented that the defendants were joint traders, who had fraudulently suspended payment of their commercial paper. It was proved that they were contractors to build the Ware River Railroad, and were to grade the road, put down the ties and rails, and build the stations; receiving money, bonds, and shares of the company, in certain proportions, as the work proceeded. Whether they bought any materials on credit did not appear. They needed money to carry on the work; and raised it in part by acceptances of the petitioner's drafts, which he signed for a consideration, and some of which he had been obliged to take up.

G. F. Verry, for petitioner.
J. W. Allen, for respondents.

LOWELL, District Judge. The defendants are joint contractors for building a railroad in the Western part of this state; and the main point of discussion has been, whether, as such contractors, they are traders within the thirty-ninth section of the bankrupt act, so that the dishonor of their commercial paper, continued for fourteen days, is an act of bankruptcy. The most usual meaning of "trader" is one who buys and sells goods. In a writ or deed or indictment it would not be regular to describe one as a trader whose business it was to build or undertake works upon the land of other people. Bouvier, in his Law Dictionary, defines "trader" as one who makes it his business to buy merchandise, or goods and chattels, and to sell the same for the purpose of making a profit. In the later statutes of bankruptcy in England, a long alphabetical list of the persons who shall be deemed traders is made a part of the act; and it may be found necessary for congress to enlarge the description of those the dishonor of whose promises shall be an act of bankruptcy, since this has been found a simple and safe test of insolvency; and they have already, by the amendment of 14th July, 1870 [16 Stat. 276], added manufacturers, brokers, and miners. In respect to most manufacturers, the act is, perhaps, only declaratory; for they have been held to be traders, since they buy goods and sell them again, though after changing the form and value of the articles. In re Eeles [Case No. 4,302]; Wakeman v. Hoyt [Id. 17,051]. The amendment seems to show that congress had a doubt whether even manufacturers could in all cases come within the description of merchants and traders; and certainly miners would not. The cases under the earlier English statutes were many, and not altogether harmonious. Whether stocks were chattels, and whether certain acts amounted to buying and certain others to selling, was disputed; but it was agreed, that to be a trader one must both buy and sell chattels or merchandise.

A clergyman who was largely engaged in draining his lands was not a trader; because, though he bought goods for use in his operations, he did not sell again. Hankey v. Jones, Cowp. 745. And see Com. Dig. "Bankrupt," B; Henley (Eden) Bankr. c. 1; Ex parte Gibbs, 2 Rose, 38; Patten v. Browne, 7 Taunt. 409. It was decided under the act of 1841 that a livery-stable keeper was not a trader. Hall v. Cooley [Case No. 5,928]. And it was so of innholders, gun-founders, and victuallers to the navy, in England. Com. Dig., ubi supra.

I am aware that neither the English statutes under which these decisions were made, nor our own laws of 1800 [1 Stat. 19] and 1841 [5 Stat. 440] had the word "trader." They used a paraphrase, substantially this: Any person using the trade of merchandise in gross or by retail. But, in all the arguments and decisions, the word "trader" was taken to express the exact equivalent of the statute phrase; and such seems to be its ordinary and proper meaning. "Trade" has a secondary sense, by which almost any occupation is called a man's trade; as in the proverb, "two of a trade can never agree:" but this latitude has not been extended to "trader." If, then, it be true, as was ably argued, that all who have occasion to borrow money on their notes or acceptances are within the mischief of the statute, I must, nevertheless, be governed by its language, when it is clear. I have heretofore ruled to the jury, that a dealer in real estate, and a builder, were not traders and tradesmen under sections 29 and 39 of the statute; and I consider those rulings, though sound, much more doubtful than one which denies the name to persons who have one contract or several for grading and building a railroad, to be paid for by the company who own the land and franchise. Petition dismissed.