## Case No. 7,829.

### KINSEY v. LITTLE RIVER COUNTY.

[4 Cent. Law J. 247.] [2]

Circuit Court, E. D. Arkansas. Nov. Term, 1876.

AUTHORITY TO COUNTY TO APPROPRIATE MONEY, ETC. — MEANS PRESCRIBED ALONE TO BE FOLLOWED — NEGOTIABILITY OF COUNTY WARRANTS —DEFENSES—RIGHT OF ACTION AGAINST COUNTY FOR MONEY BORROWED, THOUGH WITHOUT AUTHORITY.

1. When the law of the state gives the authorities of a county the power to erect public

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reprinted by permission.]

buildings, and the same law provides the present means of executing that power, such provision is an inhibition against the adoption of any other means than those prescribed by the law.

2. When the law of the state provides that the county supervisors may erect a court-house, when there is money in the treasury or when they may deem it expedient to levy a tax for such purpose, they are thereby, by implication, inhibited from resorting to any other means to raise money that will work a charge upon the county. They must resort alone to the means prescribed.

3. County warrants may be negotiable in the sense of being transferable by delivery; but they are neither commercial paper, nor do they possess the attributes of such paper. They are always open to any defense which might have been made against the payee or original holder, no matter at what time purchased, and whether with or without notice.

4. Although a county may have no right to borrow money, yet if she does negotiate a loan and thereby obtains money, and the same is appropriated to her use and benefit, an action for money had and received may be maintained by the lender for the recovery of the money actually borrowed, with legal interest on the same.

At law.

J. H. Clendenning, for plaintiff.
Jesse Turner, for defendant.

PARKER, District Judge. This is a suit brought by plaintiff against defendant, a county in the state of Arkansas, for $8,200, the said amount being evidenced by a number of county warrants. The defendant sets up, by way of defense, 1, that the said warrants were issued to cover a claim of two-thirds of the amount sued for, and for that reason they were, under the laws of the state, void; 2, that no itemized claim was ever proven up, as required by the laws of the state, prior to the issue, and for that reason they are void; 3, that, originally, the defendant borrowed of the Merchants' National Bank of Little Rock the sum of $3,000 for the purpose of completing a court-house, which had been commenced at the county-seat of the defendant, for which amount the commissioner of the county, who negotiated the loan, gave a note signed by him on behalf of the said county, for the sum of $3,000, bearing interest at the rate of 30 per cent. per annum, and deposited with said bank $5,000 in warrants of said county as collateral. These warrants were sold by the bank, and the sum of about $1,900 realized from such sale. For the balance of the $3,000 borrowed by the county, and the interest for the whole amount at the rate agreed upon, she gave the bank the $8,200 sued for. The bank transferred the same to plaintiff. The defendant further claims that, under the laws of the state, a county had no authority, express or implied, to borrow money and issue her warrants as collateral for the purpose of erecting a court-house, and that the whole transaction was ultra vires. And further, that the interest agreed upon by the bank and the agent of the county was usurious under the law of the United States, known as the "National Bank Act." The defend-

ant's answer is fully sustained by the evidence in this case.

The question in this case is not whether the county could lend its credit, but did it have a right, under the law, to borrow for the purpose for which the money in this case was borrowed? Of course, there can be no question of the right of a county to borrow money, when that power is expressly given. As to whether such power exists by implication, there is a diversity of opinion. There are but few adjudicated cases on the subject. Judge Dillon says, in 1st volume of Municipal Corporations, "that the implied authority of municipal corporations to borrow money has not, perhaps, been so often and so thoroughly considered as to be entirely closed to controversy." I think the learned author inclines to a denial of such implied power. But it must be admitted that the decided cases are the other way. In this case the power to build a court-house is given to the county court. If this power is an absolute one, without limitations or restrictions, then the question as to whether it did not possess, by implication, the power to do all things necessary, even to borrowing money to carry out the power expressly granted, would be a subject of legitimate inquiry. But is it not true in this case that the power is limited, or that there are conditions attached to it? I think so. Section 654 of Gant's Digest, among other things, provides, (1) that whenever the board of supervisors shall think it expedient to erect a court-house, and either that there are sufficient funds in the treasury which may be appropriated to the purpose of building a court-house, or if the circumstances of the county will permit such board to levy a tax for the erection of said building, said board of supervisors may make an order for the erection of the building. Here we see the board can not make an order for the building unless there are funds in the treasury, or they order a tax levied for the purpose of paying for the building. Here we find that the provisions of the law supply the county with means designed to furnish it money to carry on the work of building its court-house and other buildings. When the effect of erecting a building is to fix a charge on the county, and it is only in case this method of raising money is resorted to, have the board of supervisors any power to proceed with the work of erecting a building? The law of the state, above referred to, is an inhibition against the creation of a debt, because it provides the present means of executing the power confided to the county court; and I am of the opinion that they can not, by implication, resort to any other means than those prescribed in the state statute. This statute, being an inhibition of all power to create a debt, is consequently an inhibition of all power to give an evidence of a debt. I think it clear, therefore, that in this case the county had no right to borrow money for the purpose for which this money was bor-

rowed, and no right to hypothecate as security for such loan the warrants of the county. These warrants have passed into the hands of a third person, and the question comes up, are they now subject to the equities which would follow them in the hands of the original payee, or are they subject to all defenses which would have been available, had the action been by the payee or party to whom they were originally issued? The rule of law is, that these warrants issued by counties are unlike negotiable paper. They have not that quality of negotiable paper which prevents an inquiry into its fraudulent character or its consideration, when in the hands of an innocent holder for value before due. School Dist. v. Lombard [Case No. 12,478]; Mayor v. Ray, 19 Wall. [86 U. S.] 468, 477, 478. But even in the case of bonds issued by a municipal corporation without authority of law, there are no innocent holders, but the defense ultra vires is good against any one—and of course this is true in regard to paper which does not possess a negotiable character. I am therefore of the opinion that the plaintiff cannot recover. I am of the opinion, however, the county having received a sum of money from the bank, that this money, less the amount which has been paid, can be recovered back, with legal interest thereon, by an action of the proper kind, to wit, for money had and obtained. School Dist. v. Lombard [supra].