[Civil No. 713.   Filed March 28, 1900.]

[60 Pac. 881.]

In the Matter of the MINNESOTA AND ARIZONA CON-STRUCTION COMPANY, a Corporation, in Bankruptcy. LINTON et al., Petitioners and Appellants, v. S. R. H. ROBINSON, Respondent and Appellee.

1. BANKRUPTCY—SEC. 4, BANKRUPTCY ACT 1898, CONSTRUED—INVOLUNTARY PETITION — CORPORATIONS — TRADING AND MERCANTILE. — The statute, *supra*, provides that "Any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits . . . may be adjudged an involuntary bankrupt."

*Held,* that a corporation organized to construct railroads, turnpikes, canals, dams, reservoirs, etc., and which had constructed a canal and tunnel, and the grade and roadbed of a railroad, and which only temporarily supplied its employees with food, clothes, and other supplies, was not principally engaged in mercantile or trading pursuits, so as to be declared a bankrupt under section 4, *supra.*

2. SAME — SAME — SAME — SAME — PAST TRANSACTIONS—BUSINESS AT TIME OF PROCEEDING CONCLUSIVE.—The statute, *supra,* does not in any case apply to a corporation that has quit all buying and selling of merchandise, has no merchandise on hand, and does not owe any one for merchandise purchased, or in any way connected with its buying or selling of goods. The corporation to be adjudged a bankrupt must at the time of the filing of the petition be engaged in mercantile pursuits.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Webster Street, Judge. Affirmed.

The facts are stated in the opinion.

C. F. Ainsworth, and J. K. Doolittle, for Appellants.

That the Minnesota and Arizona Construction Company was principally engaged in trading or mercantile pursuits within the purview of the present Bankruptcy Law, see *In re San Gabriel Sanatorium Co.,* 90 Fed. 271; *In re Odell,* 18 Fed. Cas. No. 10,426; *Groves* v. *Kilgore,* 72 Me. 489; *Graham* v. *Hendricks,* 22 La. Ann. 524; *Winter* v. *Iowa R. R. Co.,* 30 Fed. Cas. No. 17,890; *Wendel* v. *State,* 62 Wis. 300, 22 N. W. 435; *Heyneman* v. *Blake,* 19 Cal. 579; *In re Pinkney,* 47 Kan. 89, 27 Pac. 179.

Baker & Bennett, for Respondent.

The Minnesota and Arizona Construction Company is neither a trader nor a merchant. *In re Duff,* 4 Fed. 519; *In re Merritt,* 7 Fed. 853; *In re Smith,* 2 Lowell, 69, Fed. Cas. No. 12,981.

DOAN, J.—On the sixth day of February, 1899, S. R. H. Robinson filed his complaint in the territorial district court of Maricopa County against the Minnesota and Arizona Construction Company, a corporation, to recover $20,500 for

services rendered the corporation as general manager and
superintendent of the construction work then being prose-
cuted by it, and on second cause of action $510 on an assigned
claim of James A. Fleming against the defendant for office
rent. On March 21st the defendant answered, and admitted
the services rendered by the plaintiff, but denied any indebt-
edness thereon in excess of $3,541, and alleged that at the time
of the organization of the defendant company the plaintiff
received seven hundred and fourteen shares of the capital
stock of the defendant corporation,—an equal amount with
his co-organizers; and that it was the agreement and under-
standing that plaintiff should receive his compensation for
services rendered by way of dividends on stock. Ancillary
to his action, plaintiff sued out a writ of attachment, which
was levied on personal property of the defendant. The de-
fendant corporation was organized under the laws of the
territory of Arizona by articles executed on the thirtieth day
of March, 1895, by Donald Grant, R. B. Langdon, A. H.
Linton, D. W. Grant, C. S. Langdon, S. R. H. Robinson, and
Samuel Grant, who, by the articles, became the board of
directors, with Donald Grant president, A. H. Linton vice-
president, C. S. Langdon secretary and treasurer. The capi-
tal stock was divided into five thousand shares of the par
value of one hundred dollars. Said organizers and directors
subscribed for the same in equal amounts. On the eighteenth
day of March, 1899, A. H. Linton brought an action in the
district court against the defendant corporation to recover
the sum of $31,006.86. On the twenty-second day of March,
1899, A. H. Linton filed a petition in bankruptcy on the fed-
eral side of the court against the defendant corporation, as a
creditor thereof, alleging that at various times between the
twenty-fifth day of March, 1895, and the 15th of March, 1899,
he had loaned the said corporation money aggregating the
sum of $31,006.86; that the corporation was insolvent, and
that within four months next preceding the date of his peti-
tion the said corporation committed an act of bankruptcy, in
that they had permitted one S. R. H. Robinson to institute a
suit against them to obtain a writ of attachment, which was
levied on the property of the defendant company, of the
value of more that eight thousand dollars, and moneys in
bank of more than seven hundred dollars, and that neither

was the attachment vacated nor suit dismissed. He further alleged that on the eighteenth day of March he had commenced an action against the defendant corporation to recover the sum of $31,006.86, and that thereupon the said corporation, by resolution of its board of directors, admitted the justice of the claim, and admitted in writing the inability of the corporation to pay its debts, and its willingness to be adjudged a bankrupt. The schedule attached to said petition shows the debts to be the petitioner's claim in the amount aforesaid, to secure which the corporation had transferred to him a promissory note of the Rio Verde Canal Company, dated March 15, 1899, in the sum of $120,273.64, valued at one dollar; claim in favor of R. B. Langdon, deceased, $2,547.50, for moneys loaned and advanced; claim in favor of Donald Grant in the sum of $32,169.10, for moneys loaned and advanced; claim in favor of Cavour S. Langdon in the sum of $16,279.92, for moneys loaned and advanced; claim in favor of D. W. Grant in the sum of $16,084.55, for moneys loaned and advanced; claim in favor of James A. Fleming $495, for rent of office rooms. Robinson intervened, and contested the petition, and alleged that it was not a corporation, either organized for the purpose of or engaged in any trade or mercantile business, but was a corporation organized for and engaged in the work of construction only. The articles of incorporation of the defendant corporation provide as follows: "Know all men by these presents, that we, the undersigned incorporators, desiring to form a corporation under the Revised Statutes of the territory of Arizona relating thereto of March 8th, 1887, and all acts amendatory thereof, do hereby associate ourselves for that purpose, and have signed, adopted, and acknowledged the following articles of incorporation, to wit: Article 1. The names of the persons so associating themselves for the purpose of forming said corporation are Donald Grant, R. B. Langdon, A. H. Linton, D. W. Grant, C. S. Langdon, S. R. H. Robinson, and Samuel Grant. Art. 2. The name of this corporation shall be the Minnesota and Arizona Construction Company. Art. 3. The principal place for transacting the business of said corporation within the territory of Arizona shall be the city of Phœnix, but said corporation expressly reserves the right to itself to carry on a part of its business in the city of Minne-

apolis, in the county of Hennepin, state of Minnesota, and at such other places within such other territories and states of the United States, or foreign countries, as may hereafter be deemed expedient for the best interest of said corporation. Art. 4. The general nature of the business proposed to be transacted by said corporation is as follows: To make and enter into contracts for the construction and equipment of railroads, railroad bridges, toll roads, and toll bridges, canals for navigation, water power, irrigation, or other purposes, public, private, municipal, or domestic, either in the territory of Arizona, or in such other states and territories, or foreign countries, as said company may from time to time deem expedient, and for that purpose to undertake the construction and erection of railroads, turnpikes, railroad bridges, toll bridges, canals, dams, flumes, reservoirs, tanks, ditches, aqueducts, sewers, hydrants, or other hydraulic or electric appliances necessary for carrying on and transacting said business. Said company shall also be authorized and empowered to undertake the construction, erection, and equipment of telegraph and telephone lines, and the generating, creating, accumulating, storing, distributing, using, and selling electricity for any and all purposes to which the same is or may be applied, and the buying, constructing, owning, using, leasing, operating, and selling any and all motors, machinery, mechanical appliances, or devices by means of which electricity may be generated, stored, transmitted, applied, or used for any lawful purpose, and to use and operate the same; and for that purpose and to that end shall be empowered to buy, lease, rent, or otherwise acquire, appropriate, enjoy, and use lands, tenements, and hereditaments, water and water rights, and rights to use of water for water power, mining, manufacturing, irrigating or any other lawful purpose. And said company shall be fully authorized and empowered to sell, lease, rent, or otherwise dispose of any of said lands, tenements, hereditaments, or appurtenances, water, water rights, or rights to the use of water for water power, mining, manufacturing, irrigating, or other purposes, and to improve the same by erecting and constructing thereon such railroads, bridges, toll roads, toll bridges, canals, dams, flumes, reservoirs, ditches, aqueducts, sewers, or any other erections, constructions, or buildings necessary or expedient to enhance the

value thereof, or to improve the same; and in like manner, and to the same extent, said corporation shall be empowered to sell, convey, lease, let, mortgage, or otherwise dispose of, charge or encumber such lands, tenements, and hereditaments, real and personal property and estate, or any of the same, or any right or interest therein, at pleasure, and in such manner and on such terms as such corporation or association may determine by order of its directors, or establish by its by-laws, and for that purpose to make and deliver, and in like manner accept and receive, all necessary and proper deeds, conveyances, mortgages, leases, and other contracts in writing obligatory, and to have and exercise all the necessary rights, franchises, muniments, states, powers, and privileges necessary to that end. And such association or corporation is authorized to loan money and funds to secure such loans by mortgage or other security, and to do and perform any and all things incidental to or expedient for the best interest of said corporation, and in carrying on and transacting the business for which it is incorporated. Art. 5. The amount of capital stock authorized is the sum of $500,000, and the same shall be divided into 5,000 shares of $100.00 each, which shall be paid in at the times and on conditions as follows: The capital stock of the corporation shall be issued for cash or for work and materials performed or furnished, or other property, franchises, or contracts conveyed or assigned to said corporation, and the same shall be issued as fully paid up and non-assessable. Art. 6. The time of the commencement of said corporation shall be the first day of April, one thousand eight hundred and ninety-five, and the same shall continue in existence, unless dissolved, or the time further extended, for the period of twenty-five years from that date. Art. 7. The officers of said corporation to conduct its affairs shall consist of a board of directors of not less than five or more than nine directors; the number of directors to be fixed and determined by the by-laws to be adopted at the first annual meeting of said corporation, until which time the incorporators shall constitute the first board of directors. The members of the first board of directors are as follows: Donald Grant, R. B. Langdon, A. H. Linton, D. W. Grant, C. S. Langdon, S. R. H. Robinson, and Samuel Grant. The annual meeting of stockholders shall be held on the second Tuesday

of March of each year, or some other date to which said meeting may be adjourned. Art. 8. The officers of said corporation shall be: President, vice-president, secretary and treasurer, and such officers as the by-laws of the corporation shall provide; and all of the officers above stated shall be members of the board of directors, but the directors shall be fully authorized and empowered to elect or appoint such other officers or agents or employees from time to time as the business of the corporation may render necessary. Until the annual meeting of the stockholders in the year 1896, and until their successors shall be duly elected and qualified, the following named persons shall be the officers of this corporation, to wit: Donald Grant, president; A. H. Linton, vice-president; C. S. Langdon, secretary and treasurer. Art. 9. The highest amount of indebtedness or liability to which said corporation shall at any time be subject shall be the sum of fifty thousand dollars. Art. 10. The private property of each officer and stockholder of said corporation shall be exempt from all corporate debts. In witness whereof, we have hereunto set our hands and seals this 30th day of March, A. D. 1895."

At the trial of the issue as to whether the company should be adjudged bankrupt it was shown that the articles of incorporation were filed with the secretary of the territory on the ninth day of May, 1895, and at a meeting of the corporation held at Minneapolis, Minn., on May 28, 1895, a resolution was passed reciting that Messrs. Langdon, Linton & Co. and Messrs. D. Grant & Co. were the owners of a certain contract with the Rio Verde Canal Company for the construction of a canal in Arizona, and resolved: "That this company purchase of said Langdon, Linton & Co. and D. Grant & Co. the said contracts above set out, and that upon the execution and delivery to this company of the proper assignments thereof the president and secretary be authorized and directed to execute and deliver to said Langdon, Linton & Co. and said D. Grant & Co. 5,000 shares of the full-paid stock of this company, or to such parties, firms, or corporations as they may direct." It was also shown that the organizers of the company and the directors in the company were all of them, except S. R. H. Robinson, members of either the firm of Langdon, Linton & Co. or D. Grant & Co.; and it was also shown

that Langdon, Linton & Co. and D. Grant & Co. and S. R. H. Robinson were contractors, engaged in the business of constructing railroads and canals. All the debts owed by the corporation were owed to its directors, except the office rent to Fleming, and the claim of Robinson as superintendent, and that claim arose and suit was brought on it while Robinson was a director; and it was shown upon the part of the intervener that Langdon, Linton & Co. and D. Grant & Co., as contractors having in charge the building of an immense canal in Arizona for the Rio Verde Canal Company, and the said Robinson also being a contractor, and desiring to aid in the building of said canal, it was agreed that they would form a corporation, and pursue the work of building the canal through its instrumentality. It was also shown that the Rio Verde Canal Company had no money on hand with which to pay for the construction of the canal, but that they were the owners of large water locations, franchises, and rights of way, and they expected to raise the money by bonds; that Langdon, Linton & Co. and D. Grant & Co. were to furnish the money for the building of a large portion of the canal, pending the negotiations of the Rio Verde Canal Company for the sale of their bonds; that when the construction company was organized no money was paid in on the capital stock, but that it was the arrangement with the members of the old firm of Langdon, Linton & Co. and the members of the old firm of D. Grant & Co., all being directors in the construction company, to advance money to the construction company, the same as they would have done as individuals in their respective partnerships of Langdon, Linton & Co. and D. Grant & Co.; the moneys so advanced by each to go upon the payment of their subscription to the capital stock. It was also in evidence that Robinson should turn in the teams and construction outfit which he then had, and his salary as manager in the field, in payment of his subscription to the capital stock, which he did to the amount of about six thousand dollars. These facts tended to prove that the corporation was not in debt to Linton or to the other members of the corporation. It appears that the petitioners had no contract relations with the corporation whereby debts owed them were created, but that they advanced money to the corporation to enable it to carry on the business of constructing

the Rio Verde Canal. There are no debts owing by the corporation, except to Fleming for office rent, outside of the claims of the directors of the corporation for moneys advanced to it, and of Robinson for salary as manager while a director; and it is urged as a grave consideration upon the court that under those circumstances one director should not be allowed by his petition to force the corporation into involuntary bankruptcy, and that his co-directors, having claims of a like character, should not be allowed to place the corporation in an attitude to be forced into bankruptcy, by signing a writing consenting to the same being done.

If the claims of the directors are not debts against the corporation, but advances made by them upon their subscription to stock, it could scarcely be said that the Minnesota and Arizona Construction Company is insolvent. It is the owner of personal property and money in the amount to pay the admitted indebtedness of the company to Robinson. Section 4 of the Bankruptcy Act does not provide for bankruptcy of corporations under voluntary petitions, and for only such corporations on involuntary petitions as are "engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits." The first question is whether, under the evidence, the defendant is such a corporation. This, if determined in the negative, will render unnecessary the consideration of the other issues presented. There was some evidence upon the part of petitioners that the company had engaged in mercantile pursuits, but this is fully met by the testimony of the intervener that they never were in the mercantile business. The first work undertaken by them was the construction of the Rio Verde Canal in Arizona, at a point far removed from the base of supplies. They furnished their men with provisions, shoes, overalls, tobacco, and such necessary articles as men have to have while at work, from E. F. Kellner's store, and paid to Kellner the price thereof, and took the amount out of their men's wages. After it ceased labor on the canal, and in order to employ its teams while waiting for a probable resumption of work thereon, it took a contract to freight from Geronimo, the terminal of a railroad, to the city of Globe. At Geronimo it did no merchandising, but dealt for itself and men at the supply store of the company from which it took its subcontract. Afterwards it

Arizona 7—10

took the contract of building a railroad in Yavapai County, and at that place it kept only a supply stock for the benefit of its employees. Under such circumstances it could not be said to be a corporation principally engaged in mercantile pursuits.

The next question is whether it is a corporation principally engaged in trading. The usual meaning of trader is "one who buys and sells goods"; "one who makes it his business to buy merchandise, goods, and chattels, and sells the same for the purpose of making a profit." The firm of Langdon, Linton & Co., as contractors, could not be called traders, nor could D. Grant & Co., or S. R. H. Robinson. When they combined, and undertook to transact their business through the medium of a corporation of which they themselves were directors, we do not find that they changed the character of the business engaged in. It possibly may be said that their articles of incorporation would have allowed them to have changed their business, or extended it into trading, but we have seen them in fact engaged in no business but the business of construction. Counsel on both sides have cited many authorities from which they reason either that the construction company was engaged in trading or that it was not. It has been decided that a baker buying flour and supplying his customers was a trader; that "merchant" includes "hotel-keeper"; that a butcher buying beef on foot and selling it was a trader, but that a butcher killing his own stock and selling it was not a trader; that a teamster who to a very considerable extent buys and sells hay and straw to support his teams while idle is not a trader; that railroad and transportation companies are not traders; that a theatrical manager, though he buy and sell costumes, is not a trader. The consensus of opinions gathered from the reports seems to be that, to constitute a trader, the operation of buying and selling for profit must enter into the occupation. The only case that seems to be in point is *In re Smith,* reported in 2 Lowell, 69, 22 Fed. Cas. 394 (No. 12,981), a decision under the old Bankruptcy Law of 1867, which seems to be quite analogous to, if not·identical with, the case at bar; and it was there decided that one who contracts with a railroad company to grade and build its road is not a trader. If an individual contractor who contracts to dig a canal or to build a railroad

is not a trader under the definition of trader and under the decision last cited, a corporation which does the same act cannot be a trader. The case *In re San Gabriel Sanatorium Co.,* (D. C.) 95 Fed. 271, cited by the appellant, is to the same effect. This company was adjudged a bankrupt, but it was in accordance with the generally accepted doctrine that a hotel-keeper is a merchant. The court says: "Respondent's institution is not a charity, but is conducted for profit. Patients are lodged and furnished with the usual accommodations of a hotel at the sanatorium, the rates charged being $25 per week and upwards. . . . If an incorporated company, such as a private hospital, be conducted in a business way for profit, and not on charitable lines, it is a trading or mercantile corporation, within the meaning of the present bankrupt law." But the court, in the opinion, uses this argument, that seems peculiarly applicable to the case at bar. After quoting from section 4 of the Bankrupt Act, "Any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits . . . may be adjudged an involuntary bankrupt," the court says: "While the artificial atmosphere used at respondent's sanatorium is doubtless the product of a manufacturing process, I am not prepared to hold that manufacturing is respondent's principal business." The court regarded the word "principally" as being employed to distinguish a calling or usual occupation from an isolated single transaction, or from something simply an incident to one's principal business or usual occupation. Thus the manufacture of artificial atmosphere by the respondent, while not an isolated single transaction, was yet of such minor importance, when compared with the volume of the entire business of the company, that the court held that it was not respondent's principal business. The general nature of the business proposed to be transacted by the defendant corporation in the case at bar as provided by its articles of incorporation is the construction of railroads, turnpikes, canals, dams, reservoirs, etc. A careful inspection of the articles of incorporation shows that the only authority to engage in merchandising conferred by the charter is given in the following language: "And such corporation is authorized to do and perform any and all things incidental to or expedient for the best interest of said corporation in carrying

on and transacting the business for which it is incorporated.''
The entire business it had in fact transacted since its incor-
poration, as shown by the record, was construction of canal
and tunnel, $105,000; freighting some months from Geronimo
to Globe; construction of grade and roadbed of railroad,
$110,000; and the purchase and furnishing of merchandise
and supplies for its force while thus engaged; and the sale
of about $253.28 worth of feed and supplies to sundry per-
sons while completing the $110,000 railroad contract. It had,
at the time when suit was instituted, some stock for the con-
duct of its principal or usual business, and some indebted-
ness that had been incurred in the prosecution of that
business; but it did not have, nor had it for months past had,
either any goods for mercantile or trading pursuits, or any
indebtedness that had been incurred in such pursuits. What
little business it had ever done in that line as incidental to its
principal business had been closed out, and all debts arising
therefrom had been paid. The statute contemplates a present
condition, not something which has been finally completed,
entirely closed up, and of which nothing remains, either of
stock on hand or debts owing. The corporation, to be ad-
judged a bankrupt, must, at the time of the filing of the peti-
tion, be engaged in mercantile pursuits. The statute does
not in any case apply to a corporation that has quit all buy-
ing and selling of merchandise, has no merchandise on hand,
and does not owe a dollar to any one for merchandise pur-
chased, or in any way connected with its buying or selling of
goods. If ever within the purview of the act, the defendant
corporation certainly was not at the time the petition was
filed. *Kinsey* v. *Little River Co.*, 4 Cent. Law J. 247, 14 Fed.
Cas. 639 (No. 7,829). The court correctly held that the de-
fendant corporation was not principally engaged in trading
or mercantile pursuits, and was, therefore, not such a cor-
poration as could be adjudged a bankrupt. This renders un-
necessary the consideration of the other questions raised, fur-
ther than to say that the dismissal of the petitions properly
followed. The judgment of the lower court is affirmed.

Sloan, J., and Davis, J., concur.